IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MALCOLM MUHAMMAD,**

**Plaintiff,**

v.                                                                    Civil Action No. 3:22cv773

**I.T. GILMORE,** *et al.*,

**Defendants.**

## MEMORANDUM OPINION

Malcolm Muhammad, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983

action.[1]  The matter is before the Court on the Motion for Summary Judgment filed by Defendant

Crystal Allen and several motions filed by Muhammad.[2]  Muhammad contends that Defendant

Allen violated his right to adequate medical care under the United States Constitution's Eighth

Amendment[3] because:   (1) she failed "to provide the plaintiff with the shoe profile from the

written doctor's order," (ECF No. 7 ¶ 35), and (2) she "was responsible for the delay in

scheduling plaintiff['s] appointment to provide medical treatment," (ECF No. 7 ¶ 36.)  For the

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system.  The
Court corrects the spelling, punctuation, and capitalization in the quotations from the parties'
submissions.  The Court omits any secondary citations from the parties' submission.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and
unusual punishments inflicted."  U.S. Const. amend. VIII.

reasons set forth below, the Motion for Summary Judgment, (ECF No. 86), will be GRANTED

and Muhammad's motions, (ECF Nos. 92, 97, 98, 103), will be DENIED.

## I.  Pertinent Procedural History

The action is proceeding on Muhammad's Amended Complaint.  (ECF No. 7.)

Muhammad contends, *inter alia*, that he was denied appropriate footwear while incarcerated at

Sussex I State Prison ("SISP").  (ECF No. 7.)  In his Amended Complaint, Muhammad names as

Defendants:  I.T. Gilmore, the Warden of SISP, (ECF No. 7 at 1); White, the Assistant Warden

of SISP, (ECF No. 7, at 2); Major Ruffin, (ECF No. 7, at 2); Unit Manager Adams, (ECF No. 7,

at 3); Crystal Allen, the Regional Health Manager for the medical contractor of the Virginia

Department of Corrections (the "VDOC"), (ECF No. 7, at 3; ECF No. 88, at 2); Nurse O'Donald,

(ECF No. 7, at 6, 8, 10); [4] and, E. Witt, Grievance Coordinator at SISP, (ECF No. 7, at 2).

By Order entered on August 19, 2020, pursuant to its screening obligations under 28

U.S.C. § 1915A, the Court dismissed Muhammad's claims against Gilmore, White, and Ruffin.

(ECF No. 8, at 1.)  Thereafter, in a Memorandum Opinion entered on March 3, 2022, the Court

summarized Muhammad's remaining "four claims based on his alleged inability to obtain EEE-

sized shoes while incarcerated at SISP," (ECF No. 77, at 2), as follows:

> First, Muhammad claims that Adams, Muhammad's Unit Manager, interfered with
> his ability to order the EEE-sized shoes from an outside vendor. Second,
> Muhammad claims that Crystal Allen, SISP's Medical Administrator, delayed his
> ability to order the shoes by failing to timely provide the shoe profile. Third,
> Muhammad claims that O'Donald, a nurse, delayed scheduling him to see a
> provider when he sought treatment for his feet, which were allegedly injured from
> not wearing correct-sized shoes. And fourth, Muhammad claims that Witt retaliated
> against him for filing grievances by responding to those grievances in a manner that
> delayed Muhammad's receipt of his special-sized shoes.

---

[4] In the Amended Complaint, Muhammad referred to this Defendant as Jo Donald.  (ECF
No. 54.)  In response to an Order from the Court, Muhammad confirmed this Defendant was
named John O'Donald.  (ECF No. 57.)

(ECF No. 77, at 2.)  By Memorandum Opinion and Order entered on March 3, 2022, the Court

granted the Motion for Summary Judgment filed by Defendants Adams and Witt and dismissed

Muhammad's claims against them.  (ECF No. 77, at 10, 12; ECF No. 78.)

By Order entered on June 4, 2022, the Court denied Muhammad's Motion to Compel

discovery because "Muhammad has not complied with Rule 37's requirement to confer before

seeking the Court's intervention."  (ECF No. 84, at 1.)  Second, "the Court agree[d with

Defendant Allen] that it would be premature to allow discovery at this juncture."  (ECF No. 84,

at 1.)  The Court stated that it "will grant the motion to stay discovery, and the stay will expire

after Allen files a dispositive motion.  Once that motion is filed, Muhammad may move the

Court to permit discovery if it is necessary to respond to defendant's motion."  (ECF No. 84,

at 1–2.)

On June 14, 2022, Muhammad filed a motion wherein he sought reconsideration of the

Order entered on June 4, 2022, and the Court's prior grant of summary judgment (the "First

Motion for Reconsideration").  (ECF No. 85.)[5]  In a thorough Order entered August 23, 2022, the

Court denied Muhammad's First Motion for Reconsideration.  (ECF No. 96.)

Undeterred, on September 6, 2022, Muhammad submitted a Second Motion for

Reconsideration, once again challenging the Court's decisions with respect to the prior grant of

summary judgment and discovery.  (ECF No. 98.)  Additionally, Muhammad filed several

---

[5] On June 30, 2022, Defendant Allen filed her Motion for Summary Judgment, (ECF
No. 86), with an accompanying notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.
1975), (ECF No. 87).  Muhammad has filed multiple responses.  (*See, e.g.*, ECF Nos. 93, 94.)
Defendant Allen filed a Reply.  (ECF No. 95.)  Muhammad filed a Motion Objecting to
Defendant's Reply.  (ECF No. 97.)  While the Court will consider the information in
Muhammad's Motion Objecting to Reply, it is not truly a motion and the Clerk will be
DIRECTED to terminate it, (ECF No. 97), as a pending motion.

Motions to Enter Judgment demanding a ruling on the motions previously filed with the Court. (ECF Nos. 92, 103, 102.)

On December 14, 2022, the action was transferred to the undersigned upon the departure of the Honorable Liam O'Grady, United States District Court Judge. By Memorandum Order entered on February 15, 2023, the Court revoked Muhammad's *in forma pauperis* status and directed him to pay the filing fee. (ECF No. 106.) On March 7, 2023, Muhammad paid the filing fee. (ECF No. 108.)

On February 10, 2023, counsel moved to withdraw from representation of Defendant Allen. (ECF No. 104.)

## II.  The Second Motion for Reconsideration

The Second Motion for Reconsideration is governed by Federal Rule of Civil Procedure 54(b).[6] The power to grant relief under Rule 54(b) "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). "Nevertheless, a court must exercise its discretion to consider such motions sparingly in order to avoid an unending motions practice." *Chapman v. Smith*, No. 3:18CV597, 2021 WL 816910, at *9 (E.D. Va. Mar. 3, 2021) (citing *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001)), *aff'd*, 858 F. App'x 685 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 1378 (2022).

---

[6] The rule states in relevant part:

[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Granting a motion for reconsideration generally should be limited to instances such as the following:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997); *see Tully v. Tolley*, 63 F. App'x 108, 113 (4th Cir. 2003) (concluding district court properly denied Rule 54(b) motion where new evidence could have been discovered with due diligence). Reconsideration is also appropriate when "the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner–Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). The courts do not entertain motions to reconsider which ask the Court merely to "rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101.

Muhammad fails to satisfy the relevant criteria that would warrant reconsideration. Certainly, in no instance has he demonstrated a prior decision was clearly erroneous and manifestly unjust. For example, Muhammad once again complains about the Court's decision on his Motion to Compel. (ECF No. 98-1, at 1–3.) Muhammad fails to demonstrate how that decision was clearly erroneous, much less that it was manifestly unjust when the Court provided him the opportunity to renew his request for discovery after Defendant Allen filed her Motion for Summary Judgment. Accordingly, Muhammad's Second Motion for Reconsideration will be DENIED. (ECF No. 98.)

### III.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party."  *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A mere "*scintilla* of evidence," however, will not preclude summary judgment.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed."  *Id.* (quoting *Munson*, 81 U.S. at 448).  The Court is tasked with assessing whether Perry "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial."  *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

In support of her Motion for Summary Judgment, Defendant Allen submitted her own declaration, (ECF No. 88-1), and copy of some of Muhammad's grievance material, (ECF No. 88-2). Additionally, Defendant Allen references other documents already in the Court's docket, which the Court refers to by the CM/ECF number. In response, Muhammad has submitted, *inter alia*, his own affidavit, (ECF No. 94-1), and host of other documents that the Court refers to by their CM/ECF numbers. Additionally, Muhammad references numerous other documents that the parties have previously filed with the Court.

The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (citation omitted) (internal quotation marks omitted). Muhammad has submitted a number of statements that run afoul of these principles. For example, in a previously submitted affidavit, Muhammad swears that Warden Hamilton approved Muhammad's request at SISP to purchase his shoes from "Union Supply Direct," Muhammad's preferred vendor. (ECF No. 40, at 29.) As the Court previously noted, "this testimony from Muhammad's affidavit is inadmissible hearsay, which cannot be used to create a fact dispute at summary judgment. *Muhammad v. Gilmore*, No. 1:20CV279 (LO/IDD), 2022 WL 657964, at *4 (E.D. Va. Mar. 3, 2022) (citing *Stanton v. Elliott*, 25 F. 4th 227, 237 n.7 (4th Cir. 2022) (citing *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991); Fed. R. Evid. 801(c)).

7

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment. All reasonable inferences are drawn in favor of Muhammad.

### III. Relevant Facts for the Motion for Summary Judgment

### A. A Shoe Profile as Compared to a Medical Shoe Order

Defendant Allen explains that "a shoe profile is an exemption or permission given by a medical provider to an offender to purchase, at his own expense, shoes that are of type and size that are not standard 'prison issued' shoes. It is an accommodation and not a medical order for special shoes." (ECF No. 88-1 ¶ 10.) Defendant Allen further explains,

> A shoe profile differs from a medical shoe order. A medical shoe order is an order for orthopedic shoes or orthotics, and it requires a provider referral to an orthotics specialist for evaluation . . . and supply of custom-fit orthotics or orthopedic shoes. A shoe profile allows the offender to purchase wider and bigger size shoes than those generally issued by the prison. For example, a shoe profile allows offenders to purchase and wear shoes that [are] EEE Wide and/or larger than normal sizes from the commissary, and if not available in the commissary, from a vendor outside the prison.

(ECF No. 88-1 ¶¶ 12, 13 (paragraph spacing and numbers omitted).)

### B. Muhammad's October 28, 2019 Shoe Profile Notation

Traditionally, a shoe profile was noted on an inmate's **"Health Care Profile"** form. (ECF No. 94-2, at 4.) For example, on Muhammad's SISP Health Care Profile, dated February 4, 2013, it was noted that Muhammad required the following special equipment, "Extra-wide shoes (Triple E)." (ECF No. 94-2, at 4.) The start date was "2/4/13" and the end date was noted as "permanently." (ECF No. 94-2, at 4.) A similar Health Care Profile form was issued for Muhammad on August 3, 2017. (ECF No. 94-2, at 5.) Pursuant to this shoe profile, on February 20, 2018, Muhammad was able to order, at his own expense, accommodating shoes from Union Supply Direct. (ECF No. 94-2, at 10.)

On October 16, 2019, Muhammad submitted an Offender Request, directed to the

Medical Department, that stated:

> This [is a] request for a renewal of my shoe profile. I was told that I need to up-
> date my shoe profile that I was permanent[ly] receiving for the last 10 yrs.
> Therefore, may I receive[] an updated shoe profile?

(ECF No. 94-2, at 1.)  On October 17, 2019, an individual in the Medical Department responded,

"[t]he new policy states that if you do not have a foot deformity, then you do not qualify for a

medical shoe profile per the Regional Nurse."  (ECF No. 94-2, at 1.)

On October 28, 2019, Muhammad went to the Medical Department complaining about

rectal bleeding and stated that he "needs a shoe profile."  (ECF No. 40-1, at 17.)  On that date,

medical provider, Michael Henning, approved Muhammad for a "shoe profile for wide shoes

EEE" and noted the same in Muhammad's medical records.[7]  (ECF No. 94-2, at 17.)  The

renewal of Muhammad's shoe profile on October 28, 2019, "was done to accommodate

[Muhammad's] shoe comfort for his wide feet," rather than "to correct or treat a medical

condition."  (ECF No. 88-1 ¶ 21.)

When Muhammad did not receive his approved shoe profile through the institutional

mail, he revisited the Medical Department on November 4, 2019.  (ECF No. 7, at 6.)  According

to Muhammad, when he revisited the Medical Department, "Defendant Allen did state out loud,

while in her office, to the plaintiff and the nurse, who both w[ere] standing at her front door, that

---

[7] However, at that time, unlike previous instances where Muhammad had been approved
to order EEE-width shoes, no Health Care Profile form was prepared reflecting Muhammad's
shoe profile.  It appears that the failure to prepare the Health Care Profile form reflecting
Muhammad's current shoe profile may have contributed to the delay in Muhammad obtaining a
physical copy of his shoe profile.

plaintiff was not getting a shoe profile that . . . had [been] authorized on 10/28/2019, until,

plaintiff g[ot] approval by security, Major Ruffin." (ECF No. 94-1 ¶ 11.)[8]

Also on November 4, 2019, Muhammad then wrote a letter to Major Ruffin (the

"November 4, 2019 Letter to Major Ruffin"), wherein, he stated in pertinent part that:

> This is a complaint letter concerning my shoe profile that I [have] been receiving now for over 10 years from WRSP, ROSP, and SISP. I [have] been ordering my shoes from "Union Supply Direct" due to [my] need [for] wide shoes width EEE. As stated above, I been long approved to orders these shoes. My last order was in early 2019. However, when I place[d] an order to reorder, property officials told me [the] policy has changed [and] shoe profile[s] ha[ve] to be renewed every 90 days.   However, my shoe profile was authorized by doctors as "permanent."
> So I place a sick-call in. I seen the nurse who schedule[d] me to see the doctor, the doctor read[] my records and he renewed my shoe profile for wide shoes EEE. I was called back to medical today, 11/04/2019, and Ms. Allen Regional Admin . . .I'm assuming told the nurse, I cannot get this shoe profile and I have to talk with you concerning this.   Now the doctor had made [a] report for me to be . . .approved for my shoe profile, [but] commissary does not have EEE wide shoes. Ms. Allen does not have the right to deny what [the] doctor order[ed].

(ECF No. 94-2, at 35.)

## C. **Muhammad's Attempt to Order Shoes from an Outside Vendor**

Pursuant to Virginia Department of Corrections (the "VDOC") Operating Procedure

("OP") 802.1,

> the commissary contract vendor is responsible for procuring all approved personal property items except publications and designated property items available for purchase from other [VDOC] contract vendors.   Inmates must purchase all authorized property items through the commissary with few exceptions.  Property items that are not regularly stocked such as approved religious property and unique clothing sizes will made available for the offender to purchase through the special order process provided in OP 801.6, Offender Services.  The medical department is consulted prior to approving the special order of any property item requested by

---

[8] Defendant Allen states: "Regarding Plaintiff's allegation on November 4, 2019 that he was seen in the medical department on November 4, 2019, and I denied him a shoe profile, this allegation is simply false.  I never denied Plaintiff a shoe profile and could not have issued or denied a shoe profile." (ECF No. 88-1 ¶ 19.)  Of course, for purposes of the Motion for Summary Judgment, the Court must assume the veracity of Muhammad's statement.

the offender for accommodation of offender medical needs. The Warden or his designee reviews and approves or disapproves special orders. This does not include items determined to be medically necessary and subject to the requirements of Operating Procedure 720.4, Co-Payment for Health Care Services.

(ECF No. 32-1 ¶ 6.) The commissary vender for SISP is Keefe. (ECF No. 32-1 ¶ 7.)

Sometime in November or December of 2019,[9] Unit Manager Jessica Adams received a request from Muhammad to authorize the withdrawal of funds from his offender trust account to order shoes from an outside vendor.[10] (ECF No. 32-1 ¶ 4.) Specifically, Muhammad "wanted to special order shoes from [an outside vendor] because he liked the way brand name (New Balance) shoes looked. He stated that he had been ordering shoes in this manner for years." (ECF No. 32-1 ¶ 4.) When Unit Manager Adams received Muhammad's request, Adams contacted Defendant Allen, who she refers to as the Medical Administrator at SISP.[11] (ECF No. 32-1 ¶ 5.) Defendant Allen advised Adams

that the commissary did not carry the requested EEE width, but it is a standard size that could be obtained for Muhammad through the commissary. It was [Adams's] understanding after talking with Ms. Allen, that the shoes were not medically necessary. Had the requested shoes been medically necessary, the medical

_____

[9] Although Unit Manager Adams could not recall the specific dates she received the request, the record reflects that Muhammad submitted a withdrawal request on December 9, 2019, to purchase shoes from Union Supply Direct. (ECF No. 94-2, at 34.) On December 20, 2019, the request was marked, "disapproved per warden on 12/20/19." (ECF No. 94-2, at 34.)

[10] Unit Manager Adams asserts Muhammad wanted to order shoes from an East Bay catalog. (ECF No. 32-1 ¶ 4.) Muhammad contends that he wanted to order the shoes from Union Supply Direct. (ECF No. 94-1 ¶ 9.) Because both vendors were not the designated commissary vendor, Keefe, it is immaterial whether Muhammad sought to order the shoes from East Bay or Union Supply Direct. In the past, Muhammad had been approved to order New Balance shoes from Union Supply Direct. (ECF No. 94-1 ¶ 10; ECF No. 94-2 at 10.)

[11] Defendant Allen swears that she was "the Regional Health Manager . . . for the medical contractor for the" VDOC. (ECF No. 88-1 ¶ 5.) She acknowledges that she also sometimes substituted as the Health Service Administrator at SISP, when SISP's Health Service Administrator was absent. (ECF No. 88-1 ¶ 7.) Given the facts established, it appears unnecessary to ascertain Defendant Allen's exact role at the time of allegations that gave rise to Muhammad's claims against her.

department would have procured the shoes in accordance with the medical operating procedures.

(ECF No. 32-1 ¶ 4.)[12]  Based on her

> understanding that Muhammad did not require shoes for medical reasons [Adams] talked with Warden Hamilton and Major Ruffin and it was determined that the size Muhammad was requesting was a standard size and it could be ordered through the Keefe commissary vendor.  Accordingly, [Adams] did not sign the withdrawal form for Muhammad to special order the shoes from the [outside vendor].  [Adams] informed Muhammad that the shoe size was not a special order item and could be ordered through the commissary.

(ECF No. 32-1 ¶ 7.)

### D. Muhammad's Pertinent Offender Requests and Grievances Regarding His Shoes

#### 1. The Provision of a Paper Copy of Muhammad's Shoe Profile

On December 11, 2019, Muhammad submitted an Offender Request for a free copy of his shoe profile from October 28, 2019.  (ECF No. 40-2, at 7.)  On December 19, 2019, a prison official responded that, "Property can provide you the EEE shoe you need.  Also, I looked through your chart and did not find a shoe profile."  (ECF No. 40-2, at 7.)

Muhammad acknowledges that he "received his 'shoe profile,'" on December 23, 2019. (ECF No. 7 ¶ 18.)

---

[12] In his affidavit submitted in opposition to Allen's Motion for Summary Judgment, Muhammad swears, "plaintiff['s] shoes were a medical necessity and [the] VDOC, was responsible for providing them.  See (Ex. A. (2) and (3).)  Keefe did not have a brand that was available in commissary.  See Ex. A. (19)."  (ECF No. 94-1 ¶ 10.)  Neither these conclusory assertions by Muhammad, nor the cited documents, establish his EEE-width shoes were a medical necessity or that he could not order such shoes through Keefe, the preferred vendor at SISP.  *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks and alterations omitted) (citations omitted) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (citing cases for the proposition that a prisoner "[w]holly lacking in medical knowledge" is incompetent to provide expert medical evidence).

On January 9, 2020, Muhammad again submitted a request for his shoe profile. (ECF No. 40-2, at 8.) On January 10, 2020, Muhammad was provided with another copy of his shoe profile. (ECF No. 40-2, at 8.)

### 2. Grievance SX1-19-REG-00104 ("104 Grievance Record")

On November 4, 2019, Muhammad submitted an informal complaint wherein he complained that Defendant Allen had denied him his shoe profile. (ECF No. 40-2, at 1.) On November 9, 2019, a nurse responded to Muhammad and informed him of his "shoe profile written 10/28/19." (ECF No. 40-2, at 1.)

On November 14, 2019, Muhammad submitted a regular grievance complaining about Defendant Allen's refusal to provide him with his shoe profile. (ECF No. 40-2, at 2.) On or about, December 16, 2019, prison officials responded,

> Further investigation has revealed that according to the Registered Nurse, Ms. Abernathy,[13] your profile for EEE wide shoes was renewed on October 28, 2019. Based on your medical record, the need for EEE wide shoes is not due to a medical deformity or injuries, so the shoe will not be ordered and provided by medical. The shoes can be ordered through the Property Department at your own expense. There is no evidence that the Regional Manager, Ms. Allen denied you a "Shoe Profile."

(ECF No. 40-2, at 4, 5.) Muhammad's grievance was deemed unfounded. (ECF No. 40-2, at 4.) Muhammad appealed that determination. (ECF No. 40-2, at 5.) On appeal, on January 14, 2020, Muhammad again was informed that he did not have a "medical order for shoes," but he could purchase the desired "shoes through the property department." (ECF No. 40-2, at 6.)

---

[13] As previously noted, although a medical provider had noted Muhammad's need for EEE shoes in Muhammad's chart, he had not filled out a Health Care Profile form reflecting Muhammad's shoe profile for EEE shoes. On December 10, 2019, apparently in the process of conducting the investigation of Muhammad's grievance, Nurse Abernathy completed a Health Care Profile form reflecting that Muhammad had a "EEE Wide Shoe Profile," beginning on "10/28/19." (ECF No. 94-2, at 8.)

### 3. <u>Grievance SX1-20-REG-00014 ("014 Grievance Record")</u>

On December 22, 2019, Muhammad submitted an Informal Complaint, wherein he

stated, in pertinent part:

> My complaint, I spoke with Warden Hamilton and Major Ruffin,
> who both approved me to continue ordering my shoes from the outside
> vendor from shoe profile that I had for over 10 [years]. I was told to give
> my order and withdraw forms to Ms. Adams and once she sign[ed]-off
> verifying I have enough funds to give the forms to Major Ruffin. I [have]
> seen Ms. Adams [and] gave her the forms, who told me she wasn't signing
> [any]thing . . . .

(ECF No. 40-3, at 1.) On January 16, 2020, Ms. Adams responded, "[y]our request to order shoe

was denied. The institution can order your shoe size." (ECF No. 40-3, at 1.)

On or about January 23, 2020, Muhammad submitted a regular grievance wherein he

stated:

> I [have] been denied my shoe order by Ms. J. Adams, who told me I [have] been
> getting over by order my shoes for now 10 [years] approved by doctors and
> wardens. I [have] been without shoes since September 2019. The Warden, Mr.
> Hamilton, has approved for me to continu[e] ordering my . . .shoes, however, Ms.
> Adams said the warden disapproved it, and this is contradictory statements. I am
> receiving foot injuries to my feet due to not wearing the proper shoes. The only
> person [who] denied my shoe order was Ms. Adams.

(ECF No. 40-3, at 2.) On that same day, the Grievance Coordinator, returned the grievance and

asked Muhammad to attach his shoe profile. (ECF No. 40-3, at 3.) Muhammad then stated that

he had requested a copy of his shoe profile, but had not received it. (ECF No. 40-3, at 4.)

Muhammad asked her to seek the shoe profile from the Medical Department. (ECF No. 40-3,

at 4.)

On February 24, 2020, Warden Gilmore, the new Warden at SISP (ECF No. 77, at 6),

found Muhammad's grievance unfounded because:

> Further investigation has revealed that the response to your informal complaint was
> accurate. It was explained to you by the Unit Manager, Ms. Adams that your

14

request to order shoes from the outside vender was denied, and the institution can order your shoe size. There is no evidence to substantiate your allegation.

(ECF No. 40-3, at 6.)  Muhammad appealed that determination.  (ECF No. 40-3, at 7.)

On March 20, 2020, the Regional Administrator, stated:

> Based on the information provided, I am reversing the decision of the Level I respondent which has determined that your grievance was unfounded. Upon review of the supportive documentation, Warden Hamilton and **Dr. Henning approved your specific shoe size EEE for you to order through the vendor Keefe.** However, the inappropriateness of staff caused a delay in addressing your concerns, therefore, your Level II Response grievance is **Founded.**

(ECF No. 40-3, at 10 (first emphasis added).)

### E.  Alleged Delay in Scheduling Medical Appointments and Transfer

On January 2, 2020, Defendant Allen investigated and responded to Muhammad's informal complaint wherein he complained that he had not be seen in the Medical Department. (ECF No. 88-1 ¶ 23.)  Defendant Allen responded that Muhammad had been seen in the Medical Department on December 27, 2019.  (ECF No. 88-2, at 4.)

"On January 30, 2020, the Medical Department received an informal Complaint from [Muhammad], which had a date of January 28, 2020. He was complaining that he had submitted a sick call request to see the doctor about his feet and that he had been placed on the sick call list two weeks ago." (ECF No. 88-1 ¶ 24.)  Defendant Allen received the Informal Complaint on January 31, 2020, and investigated it. (ECF No. 88-1 ¶ 25.)  She informed Muhammad that he was "scheduled to see the provider." (ECF No. 88-2, at 5.)

On February 12, 2020, Muhammad was seen in the Medical Department for complaints of foot pain. (ECF No. 94-2, at 40.)  The nurse on duty noted, "some calloused areas noted on both sides of feet. No bruising, bleeding, or swelling noted." (ECF No. 94-2, at 40.)  The nurse spoke with Allen and noted that Allen would "find out how DOC will obtain appropriate shoes." (ECF No. 94-2, at 40.)

On February 21, 2020, Muhammad was transferred to Keen Mountain Correctional Center. (ECF No. 88-1, ¶ 26.) At Keen Mountain, Muhammad was eventually able to order size EE wide, New Balance shoes, through Union Supply Direct. (ECF No. 94-1 ¶ 16.) Muhammad asserts that his preferred size EEE wide New Balance shoes were out of stock, so he had to order EE wide shoes. (ECF No. 94-1 ¶ 16.)

### F. **Alleged Harm from Lack of New Shoes**

Muhammad asserts,

> He had to walk to the kitchen to eat his food three (3) times a day. He was always at the end of the food-line due [to] the swelling and painful feet. Sometimes, it rain[ed and] water got into his shoes, from the worn out shoes during the time frame of the delay, his feet w[ere] expose[d] to sub-freezing temperatures, rain or snow during these brief walks, which caused more severe pain, numbness, and discomfort, and the stress of [the] discomfort[] aggravated the plaintiff mentally and physically because he knew that he had to walk to eat or to go anywhere else.

(ECF No. 94-1 ¶ 15.)

### IV. **Analysis**

To establish an Eighth Amendment claim, an inmate must prove facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). As explained below, Muhammad fails to establish either the objective component or the subjective component for his claims regarding footwear or the delay in scheduling medical appointments.

### A. **The Objective Component**

Under the objective prong, the inmate must prove that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375,

16

1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an

extreme deprivation, a prisoner must prove 'a serious or significant physical or emotional injury

resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.

2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical

treatment under the Eighth Amendment, "the objective component is satisfied by a serious

medical condition." *Quinones*, 145 F.3d at 167. A serious medical condition is "one that has

been diagnosed by a physician as *mandating* treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d

225, 241 (4th Cir. 2008) (citation omitted).

　　In the context of delayed medical care, the objective-prong analysis does not end

there. In addition to demonstrating that a medical need that was objectively serious, a plaintiff

must also establish that the delay in the provision of medical care " 'resulted in substantial

harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d

1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x. 159, 165 (4th Cir. 2008).

"[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or

considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at

*5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

## 1. Delayed Access to a Copy of the Shoe Profile

　　The failure to provide some medically prescribed footwear, such as orthopedic inserts, or

special shoes to accommodate a diabetic condition, certainly may satisfy the objective

component for an Eighth Amendment claim. But that is not what the record shows here. The

record reflects that Muhammad's shoe profile for EEE-width shoes was provided not as a

medical necessity, but as accommodation so that Muhammad could obtain comfortable shoes

that would have to be special ordered. This Court, and the United States District Court for the

Western District of Virginia, have previously concluded that temporary lapses in providing Muhammad with his preferred shoes does not satisfy the objective component for an Eighth Amendment claim. *See Muhammad v. Fleming*, No. 7:17CV00481, 2019 WL 6794219, at *20 (W.D. Va. Aug. 30, 2019) (granting summary judgment because Muhammad's complaints about lack of appropriate shoes failed to satisfy the objective component for an Eighth Amendment claim), *report and recommendation adopted*, No. 7:17CV00481, 2019 WL 6792776 (W.D. Va. Dec. 12, 2019), *vacated and remanded on other grounds*, 29 F.4th 161 (4th Cir. 2022); *see also Muhammad v. Ulep*, No. 1:14CV55 (LO/DD), 2014 WL 12527173, at *3 (E.D. Va. Apr. 10, 2014) (concluding Muhammad failed to state a claim regarding the alleged denial of appropriate footwear).

In any event, Defendant Allen's alleged refusal to provide Muhammad with a copy of his shoe profile did not foreclose Muhammad's ability to obtain new EEE wide shoes, it only delayed his ability to obtain such shoes. As the Court previously observed in granting summary judgment to Defendant Adams:

> Regardless of what outside vendor Muhammad sought to purchase shoes from, whether Union Supply Direct or East Bay, neither is Keefe—the VDOC's commissary vendor. Muhammad does not directly dispute that Keefe could have special ordered the shoes for him. He says only that the "commissary did not stock them," and it is undisputed that Keefe did not have them in stock and would have to special order them. Moreover, Muhammad has not attested that he ever tried to place a special order with Keefe, but the vendor was unable to fulfill the special request. As the Court already observed, the record supports only that, although Adams declined to allow Muhammad to obtain shoes from his desired vendor, she gave him explicit instructions for how to otherwise obtain EEE-sized shoes from commissary. Muhammad's own failure to heed Adam's directions cannot be used to impose constitutional liability on her. Instead, **once Muhammad had the shoe profile in hand, the ordering delay is most attributable to Muhammad himself**, and not to Adams, who was merely following VDOC protocol in directing Muhammad to place a special order with VDOC's commissary vendor instead of an outside vendor.

*Muhammad v. Gilmore*, No. 1:20CV279 (LO/IDD), 2022 WL 657964, at \*4 (E.D. Va. Mar. 3, 2022) (emphasis added) (internal citation omitted). According to Muhammad, he obtained a copy of his shoe profile on December 23, 2019. (ECF No. 7 ¶ 18.) Muhammad fails to demonstrate that the roughly two-month delay in obtaining new shoes, attributable to Defendant Allen's refusal to provide Muhammad with his shoe profile on November 4, 2019, resulted in "lifelong handicap, permanent loss, or considerable pain." *Shabazz,* 2012 WL 442270, at \*5 (quoting *Garrett*, 254 F.3d at 950); *see Vigil v. Morgan*, 598 F. App'x 594, 595 (10th Cir. 2015) (dismissing claim for alleged delayed treatment for hemorrhoids); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (observing that "not every twinge of pain suffered as the result of delay in medical care is actionable"). Accordingly, this delay is not sufficiently serious to support an Eighth Amendment claim.

## 2. Alleged Delay in Medical Appointments

Similarly, Muhammad fails to demonstrate any delay in scheduling his medical appointments that resulted in substantial harm to his person. The record reflects that Muhammad was regularly seen in the Medical Department between late December of 2019 and his transfer to Wallens Ridge on February 21, 2020. Muhammad fails to direct the Court to evidence that any delay in these appointments caused him a lifelong handicap or a permanent injury. *See Vigil*, 598 F. App'x at 595; *Sealock*, 218 F.3d at 1210; *Shabazz*, 2012 WL 442270, at \*5 (quoting *Garrett*, 254 F.3d at 950). Moreover, the record indicates that any pain experienced by Muhammad during this period is attributable to Muhammad's refusal to order new shoes from Keefe, the SISP's authorized vendor, rather than an expedited medical appointment. Accordingly, Muhammad's claim against Defendant Allen is subject to summary judgment because he fails to satisfy the objective component for an Eighth Amendment claim.

## B. The Subjective Component

The subjective prong of an Eighth Amendment claim requires the plaintiff to prove facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to prove facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1. Shoe Profile

The record suggests two scenarios that the Court must assess to determine whether Defendant Allen acted with deliberate indifference. The first concerns Defendant Allen's communication to Unit Manager Adams regarding Muhammad's shoe profile. The second scenario is suggested by Muhammad's testimony that "Defendant Allen did state out loud, while

20

in her office, to the plaintiff and the nurse, who both w[ere] standing at her front door, that plaintiff was not getting a shoe profile that . . . had [been] authorized on 10/28/2019, until, plaintiff g[ot] approval by security, Major Ruffin." (ECF No. 94-1 ¶ 11.)

With respect to the first scenario, Muhammad fails to demonstrate that Defendant Allen's communications with Unit Manager Adams posed a substantial risk of serious harm to his person. Adams contacted Defendant Allen after Muhammad sought to special order shoes from an outside vendor. Defendant Allen informed Defendant Adams that, although the commissary did not carry the requested EEE-width shoe, it is a standard size that could be obtained for Muhammad through the commissary vendor, Keefe. Muhammad fails to demonstrate that he could not order size EEE-width shoes through Keefe, much less that Defendant Allen knew that EEE-width shoes were unavailable through Keefe. Given these facts, Muhammad fails to demonstrate that Defendant Allen's communications to Defendant Adams regarding Muhammad's shoe profile constituted deliberate indifference.

Under the second scenario, Muhammad suggests that Defendant Allen interfered with his ability to obtain his shoe profile. This appears to be simply a variation of Muhammad's complaint that Defendant Allen interfered with his ability to order shoes from his preferred outside vendor. As such, it fails to demonstrate deliberate indifference on the part of Defendant Allen for the reasons stated immediately above. Alternatively, construing Muhammad to assert that Defendant Allen interfered with his ability to obtain a *copy* of his shoe profile, Muhammad fails to demonstrate that Defendant Allen was subjectively aware that her actions posed a substantial risk of serious harm to his person. First, the record does not indicate that Defendant Allen recognized Muhammad was requesting a paper copy of his shoe profile. Rather, the record indicates Defendant Allen perceived Muhammad to demand that his shoe profile permitted him to order shoes from an outside vendor. Second, even if one read her statement as a refusal to

provide Muhammad with a paper copy of his shoe profile, the record indicates her refusal would not, and eventually did not, prevent him from obtaining a copy of the same, much less that she subjectively recognized that it would pose a substantial risk of serious harm to his person. Given this record, Muhammad fails to direct the Court to evidence which would allow a reasonable juror to conclude that Defendant Allen acted with deliberate indifference.

### 2. <u>Alleged Delay in Medical Appointments</u>

Defendant Allen did not ignore Muhammad's complaints about any alleged delay in his medical appointments. Rather, she investigated his complaints and ascertained that he was scheduled to be seen or had recently been seen. Muhammad fails to direct the Court to evidence that indicates the timing of his medical care posed a substantial risk of serious harm to his person and Defendant Allen stood indifferent. Because Muhammad fails to demonstrate Defendant Allen acted with indifference, his Eighth Amendment claim must be dismissed.[14]

### <u>V. Conclusion</u>

Muhammad's Second Motion for Reconsideration will be DENIED. (ECF No. 98.) Muhammad's claims against Defendant Allen will be DISMISSED. The Motion for Summary Judgment will be GRANTED. (ECF No. 86.) The Clerk will be directed to TERMINATE

---

[14] To the extent that Muhammad contends that Defendant Allen is liable on a theory of supervisory liability, that claim fails. To establish a supervising officer failed to fulfill his or her duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Muhammad fails to support any one of these three factors.

Muhammad's Motion Objecting to Defendant's Reply as a pending motion. (ECF No. 97.)
Because the Court has addressed the pending motions discussed in Muhammad's Motions to
Enter Judgment those Motions will be DENIED AS MOOT. (ECF Nos. 92, 102, 103.) The
Court will address the Motion to Withdraw by counsel for Defendant Allen in a separate
Memorandum Order.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3-23-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge