IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MALCOLM MUHAMMAD,

        Plaintiff,

    v.                                    Civil Action No. 3:22cv773

I.T. GILMORE, *et al.*,

        Defendants.

### MEMORANDUM OPINION

Malcolm Muhammad, a Virginia inmate formerly confined in Sussex I State Prison ("SISP"), filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Mr. Muhammad's Amended Complaint.[2] (ECF No. 7.) In the Amended Complaint, Mr. Muhammad principally alleges that prison doctors have authorized him to obtain shoes in width size EEE with arch support, but the prison's commissary does not sell size EEE shoes. (ECF No. 7 ¶¶ 1–3.) Mr. Muhammad contends that he has a "shoe profile" that reflects the medical need for these shoes. (ECF No. 7 ¶¶ 5, 6.) The Court previously has dismissed all of Mr. Muhammad's claims except

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions. The Court omits any secondary citations from the parties' submission.

for his claims against Nurse John O'Donald.[3]  (ECF Nos. 8, 78, 110.)  With respect to Defendant

O'Donald, Mr. Muhammad alleges, in pertinent part,

> Plaintiff submitted several of many medical requests to see the doctor because his feet had swollen, paining, and without the proper shoes, he received injury to his feet and medical fail[ed] to provide treatment.

> On 11/20/2019, Plaintiff submitted a medical request for his feet, and he received a response on 2/10/2020, 51 days later, stating, "you have been scheduled." However, Defendant Nurse [O']Donald was actually responsible for the delay in scheduling the appointments.  Nurse Defendant [O']Donald was in charge to schedule the appointment after reviewing Plaintiff's medical request, who fail to make [or] schedule appointment, and that delay resulted in some substantial harm to plaintiff's feet.

> On 11/21/2019, Plaintiff submitted a medical request for his feet and received a response on 2/10/2020, 19 days later, stating, 'you have been scheduled," by Defendant [O']Donald.

(ECF No. 7 ¶¶ 10–12 (paragraph numbers omitted).)  Essentially, Mr. Muhammad contends that

Defendant O'Donald violated his rights under the Eighth Amendment[4] by failing to ensure that

Mr. Muhammad promptly receive medical care for his feet.[5]

By Memorandum Opinion and Order entered on March 23, 2023, the Court granted

Defendant Crystal Allen's Motion for Summary Judgment and dismissed Mr. Muhammad's

claim that Defendant Allen violated his Eighth Amendment rights by failing to provide prompt

---

[3] In the Amended Complaint, Mr. Muhammad referred to this Defendant as Jo Donald. (ECF No. 54.)  In response to an Order from the Court, Mr. Muhammad confirmed this Defendant was named John O'Donald.  (ECF No. 57.)

[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

[5] By Order entered on November 29, 2021, the Court directed the United States Marshals Service (the "Marshals") to serve Defendant O'Donald.  (ECF No. 58, at 1.)  As best as the Court can discern, the Marshals served Krysta O'Donald, Defendant O'Donald's adult daughter, on or about January 19, 2022.  (ECF No. 99, at 1–3.)  Nevertheless, the Marshals did not file his return until September 13, 2022.  (ECF No. 99.)  Defendant O'Donald has never made an appearance in this action.

medical treatment for his feet. (ECF Nos. 109, 110.)[6] By Memorandum Order entered on April

19, 2024, the Court stated:

> "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). The same facts and law relied upon by the Court in the March 23, 2023 Memorandum Opinion demonstrate that Plaintiff cannot establish either the objective component or the subjective component for his Eighth Amendment claims against Defendant O'Donald. Given the current state of the record, within thirty (30) days of the date of entry hereof, Plaintiff is DIRECTED to show good cause why the Court should not grant summary judgment and dismiss his claim against Defendant O'Donald.
>
> In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff is advised that he is entitled to a response that includes counter-affidavits, statements, exhibits, or other legal or factual material that supports his position in the case. In addition to such material, Plaintiff is entitled to file a legal brief.
>
> Plaintiff is further advised that if he does not respond, the Court will decide the motion on the papers already in the record.

(ECF No. 122, at 2–3.)

Mr. Muhammad has responded by submitting his own affidavit, (ECF No. 127, at 9–11),

a portion of a Virginia Department of Corrections Operating Procedure for Health Care

Complaints, (ECF No. 127-1, at 1), and copies of prison requests, grievance material, and

medical records, (ECF No. 127-1, at 2–17).

Given the current state of the record, the Court will proceed by:  (1) reviewing the

standard for summary judgment; (2) reciting the pertinent facts and law relied upon in the March

---

[6] Mr. Muhammad filed an improper interlocutory appeal from that decision. (ECF No. 112.) The United States Court of Appeals for the Fourth Circuit dismissed that appeal on March 21, 2024. (ECF No. 120.)

Mr. Muhammad has filed a Motion to Reimburse with this Court because he suggests that he was confused and misled to believe Defendant O'Donald had been dismissed prior to noting his appeal. (ECF No. 130.) Review of the docket, at the time Muhammad filed his interlocutory appeal, clearly reflected the action was open and Defendant O'Donald had not been terminated as party. Accordingly, Mr. Muhammad's Motion to Reimburse, (ECF No. 130), will be DENIED.

23, 2023 Memorandum Opinion; (3) setting forth the pertinent additional evidence Mr.
Muhammad has submitted; and, (4) then analyzing the supplemented record. As explained
below, that record demonstrates that Mr. Muhammad's claim against Defendant O'Donald must
be dismissed.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the
Court of the basis for the motion and identifying the parts of the record which demonstrate the
absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
issue, a summary judgment motion may properly be made in reliance solely on the pleadings,
depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation
marks omitted). When the motion is properly supported, the nonmoving party must go beyond
the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and
admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*
(quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences
in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835
(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere
"*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at
251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a
preliminary question for the judge, not whether there is literally no evidence, but whether there is
any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the

4

onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). The Court is tasked with assessing whether Mr. Muhammed "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (citation omitted) (internal quotation marks omitted).

Mr. Muhammad has submitted a number of statements that run afoul of these principles. For example, in a previously submitted affidavit, Mr. Muhammad swears that Warden Hamilton approved Mr. Muhammad's request at SISP to purchase his shoes from "Union Supply Direct," Mr. Muhammad's preferred vendor. (ECF No. 40, at 29.) As the Court previously noted, "this testimony from [Mr.] Muhammad's affidavit is inadmissible hearsay, which cannot be used to create a fact dispute at summary judgment." *Muhammad v. Gilmore*, No. 1:20cv279 (LO/IDD), 2022 WL 657964, at *4 (E.D. Va. Mar. 3, 2022) (citing *Stanton v. Elliott*, 25 F.4th 227, 237 n.7 (4th Cir. 2022)).

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment. All reasonable inferences are drawn in favor of Mr. Muhammad.

5

## II.  Relevant Facts from the March 23, 2023 Memorandum Opinion

The Court set forth the following facts in the March 23, 2023 Memorandum Opinion:

### A.  A Shoe Profile as Compared to a Medical Shoe Order

Defendant Allen explains that "a shoe profile is an exemption or permission given by a medical provider to an offender to purchase, at his own expense, shoes that are of type and size that are not standard 'prison issued' shoes.  It is an accommodation and not a medical order for special shoes."  (ECF No. 88-1 ¶ 10.) Defendant Allen further explains,

> A shoe profile differs from a medical shoe order.  A medical shoe order is an order for orthopedic shoes or orthotics, and it requires a provider referral to an orthotics specialist for evaluation . . . and supply of custom-fit orthotics or orthopedic shoes.  A shoe profile allows the offender to purchase wider and bigger size shoes than those generally issued by the prison.  For example, a shoe profile allows offenders to purchase and wear shoes that EEE Wide and/or larger than normal sizes from the commissary, and if not available in the commissary, from a vendor outside the prison.

(ECF No. 88-1 ¶¶ 12, 13 (paragraph spacing and numbers omitted).)

### B.  Muhammad's October 28, 2019 Shoe Profile Notation

Traditionally, a shoe profile was noted on an inmate's "**Health Care Profile**" form.  (ECF No. 94-2, at 4.)  For example, on [Mr.] Muhammad's SISP Health Care Profile, dated February 4, 2013, it was noted that [Mr.] Muhammad required the following special equipment, "Extra-wide shoes (Triple E)."  (ECF No. 94-2, at 4.)  The start date was "2/4/13" and the end date was noted as "permanently."  (ECF No. 94-2, at 4.)  A similar Health Care Profile form was issued for [Mr.] Muhammad on August 3, 2017.  (ECF No. 94-2, at 5.)  Pursuant to this shoe profile, on February 20, 2018, [Mr.] Muhammad was able to order, at his own expense, accommodating shoes from Union Supply Direct.  (ECF No. 94-2, at 10.)

On October 16, 2019, [Mr.] Muhammad submitted an Offender Request, directed to the Medical Department, that stated:

> This [is a] request for a renewal of my shoe profile.  I was told that I need to up-date my shoe profile that I was permanent[ly] receiving for the last 10 yrs.  Therefore, may I receive[] an updated shoe profile?

(ECF No. 94-2, at 1.)  On October 17, 2019, an individual in the Medical Department responded, "[t]he new policy states that if you do not have a foot deformity, then you do not qualify for a medical shoe profile per the Regional Nurse."  (ECF No. 94-2, at 1.)

On October 28, 2019, [Mr.] Muhammad went to the Medical Department complaining about rectal bleeding and stated that he "needs a shoe profile." (ECF No. 40-1, at 17.)  On that date, medical provider, Michael Henning approved Muhammad for a "shoe profile for wide shoes EEE" and noted the same in Muhammad's medical records.[7]  (ECF No. 40-1, at 17.)  The renewal of [Mr.] Muhammad's shoe profile on October 28, 2019, "was done to accommodate [Mr. Muhammad's] shoe comfort for his wide feet," rather than "to correct or treat a medical condition." (ECF No. 88-1, ¶ 21.)

When [Mr.] Muhammad did not receive his approved shoe profile through the institutional mail, he revisited the Medical Department on November 4, 2019. (ECF No. 7, at 6.)  According to [Mr.] Muhammad, when he revisited the Medical Department, "Defendant Allen did state out loud, while in her office, to the plaintiff and the nurse, who both was standing at her front door, that plaintiff was not getting a shoe profile that . . . had [been] authorized on 10/28/2019, until, plaintiff gets approval by security, Major Ruffin." (ECF No. 94-1, ¶ 11.)[8]

Also on November 4, 2019, [Mr.] Muhammad then wrote a letter to Major Ruffin ("November 4, 2019 Letter to Major Ruffin"), wherein, he stated in pertinent part that:

> This is a complaint letter concerning my shoe profile that I been receiving now for over 10 years from WRSP, ROSP, and SISP. I been ordering my shoes from "Union Supply Direct" due to I need wide shoes width EEE.  As stated above, I been long approved to orders these shoes. My last order was in early 2019.  However, when I place an order to reorder, property officials told me policy has changed, shoe profile has to be renewed every 90 days.  However, my shoe profile was authorized by doctors as "permanent."
>
> So I place a sick-call in. I seen the nurse who schedule me to see the doctor, the doctor reading my records and he renewed my shoe profile for wide shoes EEE. I was called back to medical today, 11/04/2019, and Ms. Allen Regional Admin. Nurse, I'm assuming

---

[7] However, at that time, unlike previous instances where [Mr.] Muhammad had been approved to order EEE width shoes, no Health Care Profile form was prepared reflecting Muhammad's shoe profile.  It appears that the failure to prepare the Health Care Profile form reflecting [Mr.] Muhammad's current shoe profile may have contributed to the delay in [Mr.] Muhammad obtaining a physical copy of his shoe profile.

[8] Defendant Allen states: "Regarding Plaintiff's allegation on November 4, 2019 that he was seen in the medical department on November 4, 2019, and I denied him a shoe profile, this allegation is simply false.  I never denied Plaintiff a shoe profile and could not have issued or denied a shoe profile." (ECF No. 88-1, ¶ 19.) Of course, for purposes of the Motion for Summary Judgment, the Court must assume the veracity of [Mr.] Muhammad's statement.

> told the nurse, I cannot get this shoe profile and I have to talk with you concerning this. Now the doctor had made report for me to be continue approved for my shoe profile, commissary does not have EEE wide shoes. Ms. Allen does not have the right to deny what doctor order[ed].

(ECF No. 94-2, at 35.)

### C. Muhammad's Attempt to Order Shoes from an Outside Vendor

Pursuant to Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 802.1,

> the commissary contract vendor is responsible for procuring all approved personal property items except publications and designated property items available for purchase from other [VDOC] contract vendors. Inmates must purchase all authorized property items through the commissary with few exceptions. Property items that are not regularly stocked such as approved religious property and unique clothing sizes will made available for the offender purchase through the special order process provided in OP 801.6, Offender Services. The medical department is consulted prior to approving the special order of any property item requested by the offender for accommodation of offender medical needs. The Warden or his designee reviews and approves or disapproves special orders. This does not include items determined to be medically necessary and subject to the requirements of Operating Procedure 720.4, Co-Payment for Health Care Services.

(ECF No. 32-1 ¶ 6.) The commissary vender for SISP is Keefe. (ECF No. 32-1 ¶ 7.)

Sometime in November or December of 2019,[9] Unit Manager Jessica Adams received a request from [Mr.] Muhammad to authorize the withdrawal of funds from his offender trust account to order shoes from an outside vendor.[10] (ECF

---

[9] Although Unit Manager Adams could not recall the specific dates he received the request, the record reflects that [Mr.] Muhammad submitted a withdrawal request on December 9, 2019, to purchase shoes from Union Supply Direct. (ECF No. 94-2, at 34.) On December 20, 2019, the request was marked, "disapproved per warden on 12/20/19." (ECF No. 94-2, at 34.)

[10] Unit Manager Adams asserts [Mr.] Muhammad wanted to order shoes from an East Bay catalog. (ECF No. 32-1, ¶ 4.) [Mr.] Muhammad contends that he wanted to order the shoes from Union Supply Direct. (ECF No. 94-1, ¶ 9.) Because that vendor was not the designated commissary vendor, Keefe, it is immaterial whether [Mr.] Muhammad sought to order the shoes from East Bay or Union Supply Direct. In the past, [Mr.] Muhammad had been approved to order

No. 32-1, ¶ 4.) Specifically, [Mr.] Muhammad "wanted to special order shoes from [an outside vendor] because he liked the way brand name (New Balance) shoes looked. He stated that he had been ordering shoes in this manner for years." (ECF No. 32-1, ¶ 4.) When Unit Manager Adams received [Mr.] Muhammad's request, Adams contacted Defendant Allen, who she refers to as the Medical Administrator at SISP.[11] (ECF No. 32-1, ¶ 5.) Defendant Allen advised Adams

> that the commissary did not carry the requested EEE width, but it is a standard size that could be obtained for [Mr.] Muhammad through the commissary. It was [Adams's] understanding after talking with Ms. Allen, that the shoes were not medically necessary. Had the requested shoes been medically necessary, the medical department would have procured the shoes in accordance with the medical operating procedures.

(ECF No. 32-1, ¶ 4.)[12] Based on her

> understanding that [Mr.] Muhammad did not require shoes for medical reasons [Adams] talked with Warden Hamilton and Major Ruffin and it was determined that the size [Mr.] Muhammad was requesting was a standard size and it could be ordered through the Keefe commissary vendor. Accordingly, [Adams] did not sign the withdrawal form for [Mr.] Muhammad to special order the shoes

---

New Balance shoes from Union Supply Direct. (ECF No. 94-1, ¶ 10; ECF No. 94-2, at 10.)

[11] Defendant Allen swears that she was "the Regional Health Manager . . . for the medical contractor for the" VDOC. (ECF No. 88-1 ¶ 5.) She acknowledges that she also sometimes substituted as the Health Service Administrator at SISP, when SISP's Health Service Administrator was absent. (ECF No. 88-1 ¶ 7.) Given the facts established, it appears unnecessary to ascertain Defendant Allen's exact role at the time of allegations that gave rise to Muhammad's claims against here.

[12] In his affidavit submitted in opposition to Allen's Motion for Summary Judgment, [Mr.] Muhammad swears, "plaintiff['s] shoes were a medical necessity and VDOC, was responsible for providing them. See (Ex. A. (2) and (3).) Keefe did not have a brand that was available in commissary. See Ex. A. (19)." (ECF No. 94-1, ¶ 10.) Neither these conclusory assertions by [Mr.] Muhammad nor the cited documents establish his EEE wide shoes were a medical necessity or that he could not order such shoes through Keefe, the preferred vendor at SISP. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks and alterations omitted) (citations omitted) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (citing cases for the proposition that a prisoner "[w]holly lacking in medical knowledge" is incompetent to provide expert medical evidence).

from the [outside vendor].  [Adams] informed Muhammad that the
shoe size was not a special order item and could be ordered through
the commissary.

(ECF No. 32-1, ¶ 7.)

### D. Muhammad's Pertinent Offender Requests and Grievances Regarding His Shoes

#### 1. The Provision of a Paper Copy of Muhammad's Shoe Profile

On December 11, 2019, [Mr.] Muhammad submitted an Offender Request
for a free copy of his shoe profile from October 28, 2019.  (ECF No. 40-2, at 7.)
On December 19, 2019, a prison official responded that, "Property can provide you
the EEE shoe you need.  Also, I looked through your chart and did not find a shoe
profile."  (ECF No. 40-2, at 7.)

[Mr.] Muhammad acknowledges that he "received his 'shoe profile,'" on
December 23, 2019.  (ECF No. 7 ¶ 18.)

On January 9, 2020, [Mr.] Muhammad again submitted a request for his
shoe profile.  (ECF No. 40-2, at 8.)  On January 10, 2020, [Mr.] Muhammad was
provided with another copy of his shoe profile.  (ECF No. 40-2, at 8.)

#### 2. Grievance SX1-19-REG-00104 ("104-Grievance Record")

On November 4, 2019, [Mr.] Muhammad submitted an informal complaint
wherein he complained that Defendant Allen had denied him his shoe profile.  (ECF
No. 40-2, at 1.)  On November 9, 2019, a nurse responded to [Mr.] Muhammad and
informed him "shoe profile written 10/28/19."  (ECF No. 40-2, at 1.)

On November 14, 2019, [Mr.] Muhammad submitted a regular grievance
complaining about Defendant Allen's refusal to provide him with his shoe profile.
(ECF No. 40-2, at 2.)  On or about, December 16, 2019, prison officials responded,

> Further investigation has revealed that according to the
> Registered Nurse, Ms. Abernathy,[13] your profile for EEE wide
> shoes was renewed on October 28, 2019.  Based on your medical
> record, the need for EEE wide shoes is not due to a medical
> deformity or injuries, so the shoe will not be ordered and provided

---

[13] As previously noted, although a medical provider had noted [Mr.]
Muhammad's need for EEE shoes in [Mr.] Muhammad's chart, he had not filled out
a Health Care Profile form reflecting [Mr.] Muhammad's shoe profile for EEE
shoes.  On December 10, 2019, apparently in the process of conducting the
investigation of [Mr.] Muhammad's grievance, Nurse Abernathy completed a
Health Care Profile form reflecting that [Mr.] Muhammad had a "EEE Wide Shoe
Profile," beginning on "10/28/19."  (ECF No. 94-2, at 8.)

by medical.   The shoes can be ordered through the Property Department at your own expense.   There is no evidence that the Regional Manager, Ms. Allen denied you a "Shoe Profile."

(ECF No. 40-2, at 4, 5.)   [Mr.] Muhammad's grievance was deemed unfounded. (ECF No. 40-2, at 4.)   [Mr.] Muhammad appealed that determination.   (ECF No. 40-2, at 5.)   On appeal, on January 14, 2020, [Mr.] Muhammad again was informed that he did not have a "medical order for shoes," but he could purchase the desired "shoes through the property department."   (ECF No. 40-2, at 6.)

### 3.   Grievance SX1-20-REG-00014 ("014 Grievance Record")

On December 22, 2019, [Mr.] Muhammad submitted an Informal Complaint, wherein he stated, in pertinent part:

> My complaint, I spoke with Warden Hamilton and Major Ruffin, who both approved me to continue ordering my shoes from the outside vendor from shoe profile that I had for over 10 yrs. I was told to give my order and withdraw forms to Ms. Adams and once she sign-off verifying I have enough funds to give the forms to Major Ruffin.   I seen Ms. Adams gave her the forms, who told me she wasn't signing nothing . . . .

(ECF No. 40-3, at 1.)   On January 16, 2020, Ms. Adams responded, "[y]our request to order shoe was denied.   The institution can order your shoe size."   (ECF No. 40-3, at 1.)

On or about January 23, 2020, [Mr.] Muhammad submitted a regular grievance wherein he stated:

> I been denied my shoe order by Ms. J. Adams, who told me I been getting over by order my shoes for now 10 yrs. approved by doctors and wardens.   I been without shoes since September 2019.   The Warden, Mr. Hamilton, has approved for me to continu[e] ordering my shoes, however, Ms. Adams said the warden disapproved it, and this is contradictory statements.   I am receiving foot injuries to my feet due to not wearing the proper shoes.   The only person denied my shoe order was Ms. Adams.

(ECF No. 40-3, at 2.)   On that same day, the Grievance Coordinator, returned the grievance and asked [Mr.] Muhammad to attach his shoe profile.   (ECF No. 40-3, at 3.)   [Mr.] Muhammad then stated that he had requested a copy of his shoe profile, but had not received it.   (ECF No. 40-3, at 4.)   [Mr.] Muhammad asked her to seek the shoe profile from the Medical Department.   (ECF No. 40-3, at 4.)

On February 24, 2020, Warden Gilmore, the new Warden at SISP (ECF No. 77, at 6), found [Mr.] Muhammad's grievance unfounded because:

> Further investigation has revealed that the response to your informal complaint was accurate.   It was explained to you by the Unit Manager, Ms. Adams that your request to order shoes from the outside vender was denied, and the institution can order your shoe size.  There is no evidence to substantiate your allegation.

(ECF No. 40-3, at 6.)  [Mr.] Muhammad appealed that determination.  (ECF No. 40-3, at 7.)

> On March 20, 2020, the Regional Administrator, stated:

> Based on the information provided, I am reversing the decision of the Level I respondent which has determined that your grievance was unfounded.   Upon review of the supportive documentation, Warden Hamilton and **Dr. Henning approved your specific shoe size EEE for you to order through the vendor Keefe.**  However, the inappropriateness of staff caused a delay in addressing your concerns, therefore, your Level II Response grievance is **Founded.**

(ECF No. 40-3, at 10 (first emphasis added).)

### E.  Alleged Delay in Scheduling Medical Appointments and Transfer

On January 2, 2020, Defendant Allen investigated and responded to [Mr.] Muhammad's informal complaint wherein he complained that he had not be seen in the Medical Department. (ECF No. 88-1 ¶ 23.) Defendant Allen responded that Muhammad had been seen in the Medical Department on December 27, 2019. (ECF No. 88-2, at 4.)

"On January 30, 2020, the Medical Department received an informal Complaint from the [Mr. Muhammad], which had a date of January 28, 2020. He was complaining that he had submitted a sick call request to see the doctor about his feet and that he had been placed on the sick call list two weeks ago." (ECF No. 88-1 ¶ 24.) Defendant Allen received the Informal Complaint on January 31, 2020, and investigated it. (ECF No. 88-1 ¶ 25.) She informed [Mr.] Muhammad that he was "scheduled to see the provider." (ECF No. 88-2, at 5.)

On February 12, 2020, [Mr.]  Muhammad was seen in the Medical Department for complaints of foot pain. (ECF No. 94-2, at 40.) The nurse on duty noted, "some calloused areas noted on both sides of feet.  No bruising, bleeding, or swelling noted." (ECF No. 94-2, at 40.) The nurse spoke with Ms. Allen, and noted Ms. Allen "will find out how DOC will obtain appropriate shoes." (ECF No. 94-2, at 40.)

On February 21, 2020, [Mr.] Muhammad was transferred to Keen Mountain Correctional Center. (ECF No. 88-1, ¶ 26.) At Keen Mountain, [Mr.] Muhammad was eventually able to order size EE wide, New Balance shoes through Union

12

Supply Direct. (ECF No. 94-1 ¶ 16.) [Mr.] Muhammad asserts that his preferred size EEE wide New Balance shoes were out of stock, so he had to order EE wide shoes. (ECF No. 94-1 ¶ 16.)

### F. Alleged Harm from Lack of New Shoes

[Mr.] Muhammad asserts,

> He had to walk to the kitchen to eat his food three (3) times a day. He was always at the end of the food-line due the swelling and painful feet. Sometimes, it rain, water got into his shoes, from the worn out shoes during the time frame of the delay, his feet was expose[d] to sub-freezing temperatures, rain or snow during these brief walks, which caused more severe pain, numbness, and discomfort, and the stress of [the] discomforts aggravated the plaintiff mentally and physically because he knew that he had to walk to eat or to go anywhere else.

(ECF No. 94-1, ¶ 15.)

*Muhammad v. Gilmore*, No. 3:22cv773 (MHL), 2023 WL 2617771, at *4–9 (E.D. Va. Mar. 23, 2023), *appeal dismissed sub nom. Muhammad v. Allen*, No. 23-6388, 2024 WL 1193102 (4th Cir. Mar. 20, 2024).

### III. Legal Conclusions from March 23, 2023 Memorandum Opinion

In light of the above facts, the Court made the following legal conclusions in the March 23, 2023 Memorandum Opinion:

> To establish an Eighth Amendment claim, an inmate must prove facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). As explained below, [Mr.] Muhammad fails to establish either the objective component or the subjective component for his claims regarding footwear or the delay in scheduling medical appointments.

#### A. The Objective Component

> Under the objective prong, the inmate must prove that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme

13

deprivation, a prisoner must prove 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A serious medical condition is "one that has been diagnosed by a physician as *mandating* treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).

In the context of delayed medical care, the objective-prong analysis does not end there. In addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x. 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

## 1. Delayed Access to a Copy of the Shoe Profile

The failure to provide some medically prescribed footwear, such as orthopedic inserts, or special shoes to accommodate a diabetic condition, certainly may satisfy the objective component for an Eighth Amendment claim. But, that is not what the record shows here. The record reflects that [Mr.] Muhammad's shoe profile for EEE wide shoes was provided not as a medical necessity, but as accommodation so that [Mr.] Muhammad could obtain comfortable shoes that would have to be special ordered. This Court and the United States District Court for the Western District of Virginia have previously concluded that temporary lapses in providing [Mr.] Muhammad with his preferred shoes did not satisfy the objective component for an Eighth Amendment claim. *See Muhammad v. Fleming*, No. 7:17cv00481, 2019 WL 6794219, at *20 (W.D. Va. Aug. 30, 2019) (granting summary judgment because [Mr.] Muhammad's complaints about lack of appropriate shoes failed to satisfy the objective component for an Eighth Amendment claim), *report and recommendation adopted*, No. 7:17CV00481, 2019 WL 6792776 (W.D. Va. Dec. 12, 2019), *vacated and remanded on other grounds*, 29 F.4th 161 (4th Cir. 2022); *see also Muhammad v. Ulep*, No. 1:14CV55 (LO/DD), 2014 WL 12527173, at *3 (E.D. Va. Apr. 10, 2014) (concluding [Mr.] Muhammad failed to state a claim regarding the alleged denial of appropriate footwear).

In any event, Defendant Allen's alleged refusal to provide [Mr.] Muhammad with a copy of his shoe profile did not foreclose [Mr.] Muhammad's ability to obtain new EEE wide shoes, it only delayed his ability to obtain such shoes. As the Court previously observed in granting summary judgment to Defendant Adams:

> Regardless of what outside vendor [Mr.] Muhammad sought to purchase shoes from, whether Union Supply Direct or East Bay, neither is Keefe—the VDOC's commissary vendor. [Mr.] Muhammad does not directly dispute that Keefe could have special ordered the shoes for him. He says only that the "commissary did not stock them," and it is undisputed that Keefe did not have them in stock and would have to special order them. Moreover, [Mr.] Muhammad has not attested that he ever tried to place a special order with Keefe, but the vendor was unable to fulfill the special request. As the Court already observed, the record supports only that, although Adams declined to allow [Mr.] Muhammad to obtain shoes from his desired vendor, she gave him explicit instructions for how to otherwise obtain EEE-sized shoes from commissary. Muhammad's own failure to heed Adam's directions cannot be used to impose constitutional liability on her. Instead, **once [Mr.] Muhammad had the shoe profile in hand, the ordering delay is most attributable to [Mr.] Muhammad himself**, and not to Adams, who was merely following VDOC protocol in directing [Mr.] Muhammad to place a special order with VDOC's commissary vendor instead of an outside vendor.

*Muhammad v. Gilmore*, No. 1:20cv279 (LO/IDD), 2022 WL 657964, at *4 (E.D. Va. Mar. 3, 2022) (emphasis added) (internal citation omitted). According to Muhammad, he obtained a copy of his shoe profile on December 23, 2019. (ECF No. 7, ¶ 18.) [Mr.] Muhammad fails to demonstrate that the roughly two-month delay in obtaining new shoes, attributable to Defendant's Allen refusal to provide Muhammad with his shoe profile on November 4, 2019, resulted in "lifelong handicap, permanent loss, or considerable pain." *Shabazz*, 2012 WL 442270, at *5 (quoting *Garrett*, 254 F.3d at 950); *see Vigil v. Morgan*, 598 F. App'x 594, 595 (10th Cir. 2015) (dismissing claim for alleged delayed treatment for hemorrhoids); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (observing that "not every twinge of pain suffered as the result of delay in medical care is actionable"). Accordingly, this delay is not sufficiently serious to support an Eighth Amendment claim.

## 2. Alleged Delay in Medical Appointments

Similarly, [Mr.] Muhammad fails to demonstrate any delay in scheduling his medical appointments resulted in substantial harm to his person. The record reflects that [Mr.] Muhammad was regularly seen in the Medical Department between late December of 2019 and his transfer to Wallens Ridge on February 21, 2020. [Mr.] Muhammad fails to direct the Court to evidence that any delay in these appointments caused him a lifelong handicap or a permanent injury. *Id.* Moreover, the record indicates that any pain experienced by [Mr.] Muhammad during this period is attributable to [Mr.] Muhammad's refusal to order new shoes from Keefe, the SISP's authorized vendor, rather than an expedited medical appointment. Accordingly, [Mr.] Muhammad's claim against Defendant Allen is subject to summary judgment because he fails to satisfy the objective component for an Eighth Amendment claim.

## B. **The Subjective Component**

The subjective prong of an Eighth Amendment claim requires the plaintiff to prove facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to prove facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1. **Shoe Profile**

The record suggests two scenarios that the Court must assess to determine whether Defendant Allen acted with deliberate indifference. The first concerns Defendant Allen's communication to Unit Manager Adams regarding [Mr.] Muhammad's shoe profile. The second scenario is suggested by [Mr.] Muhammad's testimony that "Defendant Allen did state out loud, while in her office, to the plaintiff and the nurse, who both was standing at her front door, that plaintiff was not getting a shoe profile that . . . had [been] authorized on 10/28/2019, until, plaintiff gets approval by security, Major Ruffin." (ECF No. 94-1, ¶ 11.)

With respect to the first scenario, [Mr.] Muhammad fails to demonstrate that Defendant Allen's communications with Unit Manager Adams posed a substantial risk of serious harm to his person. Adams contacted Defendant Allen after [Mr.] Muhammad sought to special order shoes from an outside vendor. Defendant Allen informed Defendant Adams that, although the commissary did not carry the requested EEE width shoe, it is a standard size that could be obtained for [Mr.] Muhammad through the commissary vendor, Keefe. [Mr.] Muhammad fails to demonstrate that he could not order size EEE width shoes through Keefe, much less

16

that Defendant Allen knew that EEE wide shoes width were unavailable through Keefe. Given these facts, [Mr.] Muhammad fails to demonstrate that Defendant Allen's communications to Defendant Adams regarding [Mr.] Muhammad's shoe profile constituted deliberate indifference.

Under the second scenario, [Mr.] Muhammad suggests that Defendant Allen interfered with his ability to obtain his shoe profile. This appears to be simply a variation of [Mr.] Muhammad's complaint that Defendant Allen interfered with his ability order shoes from his preferred outside vendor. As such, it fails to demonstrate deliberate indifference on the part of Defendant Allen for the reasons stated immediately above. Alternatively, construing [Mr.] Muhammad to assert that Defendant Allen interfered with his ability to obtain a copy of his shoe profile, [Mr.] Muhammad fails to demonstrate that Defendant Allen was subjectively aware that her actions posed a substantial risk of serious harm to his person. First, the record does not indicate that Defendant Allen recognized [Mr.] Muhammad was requesting a paper copy of his shoe profile. Rather, the record indicates Defendant Allen perceived [Mr.] Muhammad to demand that his shoe profile permitted him to order shoes from an outside vendor. Second, even if one read her statement as a refusal to provide [Mr.] Muhammad with a paper copy of his shoe profile, the record indicates her refusal would not prevent him from obtaining a copy of the same, much less that she subjectively recognized that it would pose a substantial risk of serious harm to his person. Given this record, [Mr.] Muhammad fails to direct the Court to evidence which would allow a reasonable juror to conclude that Defendant Allen acted with deliberate indifference.

## 2. Alleged Delay in Medical Appointments

Defendant Allen did not ignore [Mr.] Muhammad's complaints about any alleged delay in his medical appointments. Rather, she investigated his complaints, ascertained that he was scheduled to be seen or had recently been seen. [Mr.] Muhammad fails to direct the Court to evidence that indicates the timing of his medical care posed a substantial risk of serious harm to his person and Defendant Allen stood indifferent. Because [Mr.] Muhammad fails to demonstrate Defendant Allen acted with indifference, his Eighth Amendment claim must be dismissed.[14]

---

[14] To the extent that [Mr.] Muhammad contends that Defendant Allen is liable on a theory of supervisory liability, that claim fails. To establish a supervising officer failed to fulfill his or her duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Muhammad v. Gilmore*, No. 3:22cv773 (MHL), 2023 WL 2617771, at *9–12 (E.D. Va. Mar. 23, 2023).

### IV. Supplemental Facts for the Current Motion for Summary Judgment

VDOC Operating 720.1 provides, in pertinent part:

Medical requests should be triaged within 24 hours by a qualified health care professional or health-care trained staff, and the offender seen by a qualified health care professional within 72 hours (96 hours on weekends)

    a.  For medical complaints deemed to be urgent, a referral shall be made for the offender to see a medical practitioner, and the offender should be seen by the practitioner within 72 hours of the referral.

    b.  If the medical complaint is determined to be routine and referral to medical practitioner is deemed indicated, the offender should be seen by the medical practitioner within two weeks of the referral.

(ECF No. 127-1, at 1.) Additionally, each facility in the VDOC provides "a system that enables all offenders . . . to request health services daily" such as a walk-in system or daily rounds in each housing unit. (ECF No. 127-1, at 1.)

Defendant O'Donald was a nurse at SISP. (ECF No. 127, at 9.) One of his duties was to process offender medical requests. (ECF No. 127, at 9.) On November 20, 2019, Mr. Muhammad submitted an Offender Request, wherein he requested "to be place on sick-call because of pain and injuries of my foot arches." ("November 20, 2019 Offender Request," ECF No. 127-1, at 3.) On November 21, 2019, Mr. Muhammad two more, almost identical, Offender Requests. ("November 21, 2019 Offender Requests," ECF No. 127-1, at 4, 5.)

On December 23 and December 24, 2019, Mr. Muhammad submitted two Offender Requests each day. On December 23, 2019, Mr. Muhammad submitted an Offender Request wherein he requested "to be added on sick-call for paining feet." (ECF No. 127-1, at 6.) On

---

    *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). [Mr.] Muhammad fails to support any one of these three factors.

December 26, 2019, Defendant O'Donald responded, "You have been scheduled." (ECF No. 127-1, at 6.)

On December 23, 2019, Mr. Muhammad submitted a second Offender Request wherein he requested "to be added to sick-call for paining feet." (ECF No. 127-1, at 7.) On December 26, 2019, Defendant O'Donald responded, "Mr. Muhammad, per our conversation 12-26, I inquired about your ability to order EEE shoes. No one here can think of why the commissary couldn't order your shoes. I was directed to have you try and order them again. You have been scheduled." (ECF No. 127-1, at 7.)

On December 24, 2019, Mr. Muhammad submitted an Offender Request wherein he requested, "to be added to sick-call for paining feet." (ECF No. 127-1, at 8.) On December 26, 2019, Defendant O'Donald responded, "Please try and order your shoes again through the commissary. I asked several people in medical, no one here is sure why your order could not go through the last time. You have been scheduled." (ECF No. 127-1, at 8.)

On December 24, 2019, Mr. Muhammad submitted a second Offender Request wherein he requested, "to be added to sick-call for paining feet." (ECF No.127-1, at 9.) On December 26, 2019, Defendant O'Donald responded, "You have been scheduled." (ECF No. 127-1, at 9.)

On December 27, 2019, Mr. Muhammad was seen in the medical department for his complaints of foot pain from "ill-fitting shoes." (ECF No. 40-4, at 2.) Mr. Muhammad stated that the Warden had approved his "shoe profile for extra wide size EEE shoes." (ECF No. 40-4, at 2.) The medical professional did not observe any "open wounds," but made notes to follow up with Unit Manager Adams about Mr. Muhammad's shoe profile. (ECF No. 40-4, at 2.)

On January 17, 2020, Mr. Muhammad submitted an Offender Request wherein he stated, "Nurse O'Donald, this request is to ask you did you schedule me to see the doctor like you said you was going to do, because my feet is hurting[?]" (ECF No. 127-1, at 10.) On January 20,

19

2020, an individual by the name of Workman responded, "You have been scheduled." (ECF No. 127-1, at 10.)

On January 24, 2020, Mr. Muhammad submitted an Offender Request wherein he stated, "Nurse O'Donald, here I'm requesting to be seen by the doctor for my feet. I'm in pain when I walk and I need to see the doctor." (ECF No. 127-1, at 11.) On January 27, 2020, Defendant O'Donald responded, "You have been scheduled." (ECF No. 127-1, at 11.)

On January 28, 2020, Mr. Muhammad submitted an informal complaint wherein he stated, "I have submitted a sick-call medical request to see the doctor about my feet which is in pain and sore. Nurse O'Donald said he placed me just two weeks ago to see the doctor. However, my feet is hurting and I need to see the doctor." (ECF No. 127-1, at 12.) On January 31, 2020, a nurse responded, "you are scheduled to see the provider." (ECF No. 127-1, at 12.)

On February 6, 2020, Mr. Muhammad submitted a grievance wherein he complained that prison officials keep telling him he is scheduled to see the doctor, but he had not seen the doctor. (ECF No. 127-1 at 13.)

On February 10, 2020, Defendant O'Donald finally responded to Mr. Muhammad's November 20, 2019 and November 21, 2019 Offender Requests and informed Mr. Muhammad, "You have been scheduled." (ECF No. 127-1, at 3, 4, 5.) Additionally, in response to one of the November 21, 2019 Offender Requests, Defendant O'Donald stated, "Mr. Muhammad we are contacting DOC to see how to best order you appropriate shoes." (ECF No. 127-1, at 5.)

Additionally, as noted previously, on February 12, 2020, Mr. Muhammad was seen in the Medical Department for complaints of foot pain. (ECF No. 94-2, at 40.) The nurse on duty noted, "some calloused areas noted on both sides of feet. No bruising, bleeding, or swelling noted." (ECF No. 94-2, at 40.) The nurse spoke with Ms. Allen, and noted Ms. Allen "will find out how DOC will obtain appropriate shoes." (ECF No. 94-2, at 40.)

20

Mr. Muhammad complains because of the delay in scheduling his medical appointments he had to walk with shoes that were

> split on both sides, [had] holes in the bottom, where plaintiff was forced to put newspaper for some support, his feet was red and swollen, and painful to walk, sometimes it rain[ed and] water got into his shoes . . . plaintiff's feet was expos[ed] to subfreezing temperatures, rain, or snow during brief walks, which cause more severe pain, numbness, and discomfort . . . .

(ECF No. 127, at 10.)

## V. Analysis

Mr. Muhammad fails to satisfy either the objective or subjective prongs for his Eighth Amendment claim against Defendant O'Donald.

### A.    Objective Prong

As the Court previously noted, in the context of delayed medical care, under the objective-prong, "[i]n addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care 'resulted in substantial harm.'" *Muhammad*, 2023 WL 2617771, at *9 (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)), *appeal dismissed sub nom. Muhammad v. Allen*, No. 23-6388, 2024 WL 1193102 (4th Cir. Mar. 20, 2024). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (alteration in original) (quoting *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012)).

Here, Mr. Muhammad requested to be seen by a medical provider on November 20, 2019, and November 21, 2019 for foot pain. Mr. Muhammad did not see a medical provider until December 27, 2019. At that time, Mr. Muhammad complained of foot pain from ill-fitting shoes. Nevertheless, no significant medical care was provided. Rather, the medical provider simply indicated he would follow-up on Mr. Muhammad's foot profile so Mr. Muhammad could order his extra-wide, EEE, shoes. But, the record reflects that Mr. Muhammad had "obtained a

copy of his shoe profile on December 23, 2019." *Muhammad*, 2023 WL 2617771, at *10 (citing (ECF No. 7 ¶ 18).). "**[O]nce [Mr.] Muhammad had the shoe profile in hand, the ordering delay is most attributable to [Mr.] Muhammad himself,** and not to [prison officials], who w[ere] merely following VDOC protocol in directing [Mr.] Muhammad to place a special order with VDOC's commissary vendor instead of an outside vendor." *Id.* (quoting *Muhammad*, 2022 WL 657964, at *4). Thus, Mr. Muhammad fails to establish that any delay in scheduling a medical appointment for Mr. Muhammad between November 20, 2019 and December 27, 2019 resulted in any harm to his person, much less substantial harm.

Sometime in mid-January 2020, Mr. Muhammad again requested that Defendant O'Donald schedule him to see the medical provider for foot pain. On January 27, 2020, Defendant O'Donald assured Mr. Muhammad that he had been scheduled to see the medical provider. On February 12, 2020, Mr. Muhammad was seen in the medical department and the nurse on duty noted, "some calloused areas noted on both sides of feet. No bruising, bleeding, or swelling noted." (ECF No. 94-2, at 40.) The only medical care provided was that the nurse spoke with Ms. Allen, and noted Ms. Allen "will find out how DOC will obtain appropriate shoes." (ECF No. 94-2, at 40.) But, as noted above, by December 23, 2019, Mr. Muhammad had the means to obtain the appropriate shoes. Thus, Mr. Muhammad's own recalcitrance in ordering shoes, rather than the lack of a prompt medical appointment, was the source of any harm to Mr. Muhammad.[15] As the Fourth Circuit recently observed:

> [W]hen an inmate *can* choose to avoid a particular condition or activity or has the means to secure his own necessities, he necessarily has the power "to exercise responsibility for his own welfare." So, if the inmate exercises (or rather, abdicates) that responsibility by voluntarily exposing himself to a condition or activity, *prison officials* have not deprived him of any right or necessity. Rather, the prisoner has inflicted that deprivation upon himself.

---

[15] Further, "[Mr.] Muhammad fails to demonstrate any delay in scheduling his medical appointments that resulted in substantial harm to his person." *Muhammad*, 2023 WL 2617771, at *10.

*Hodges v. Meletis*, 109 F.4th 252, 260 (4th Cir. 2024) (citations omitted).  Mr. Muhammad

fails to satisfy the objective component for his Eighth Amendment claim against

Defendant O'Donald.

      **B.**    **<u>Subjective Prong</u>**

      At the outset, it must be reiterated that Mr. Muhammad fails to direct the Court to

evidence that reflects any delay in scheduling medical appointments by Defendant O'Donald that

exposed Mr. Muhammad to a substantial risk of serious harm.  Moreover, Mr. Muhammad fails

to demonstrate that Defendant O'Donald was indifferent to *any* risk posed by Mr. Muhammad's

need for medical appointments for his foot pain.  Defendant O'Donald responded to each request

for a medical appointment and ensured that Mr. Muhammad was scheduled to be seen by the

medical provider.  Further, the record reflects that Defendant O'Donald perceived that the

underlying problem for Mr. Muhammad's medical appointments was the need for proper

footwear and encouraged Mr. Muhammad to order appropriate shoes from the commissary.  Mr.

Muhammad fails to demonstrate that Defendant O'Donald acted with deliberate indifference.

      Mr. Muhammad's Eighth Amendment claim against Defendant O'Donald will

be DISMISSED.

**VI.  Conclusion**

      Mr. Muhammad's Motion to Reimburse, (ECF No. 130), will be DENIED.  Summary

Judgment will be GRANTED in favor of Defendant O'Donald.  Mr. Muhammad's Motion to

Deny Motion for Summary Judgment, (ECF No. 126), will be DENIED.  Mr. Muhammad's

Eighth Amendment claim against Defendant O'Donald will be DISMISSED.  The action will

be DISMISSED.

Date: 10/31/2024
Richmond, Virginia

                                    /s/
                              M. Hannah Lauck
                              United States District Judge